UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**EDRA D BLIXSETH**,<br><br>Debtor. | Case No. **09-60452-7** |
| **RICHARD SAMSON**,<br><br>Plaintiff.<br><br>-vs-<br><br>**TIMOTHY L. BLIXSETH**, **Desert Ranch LLLP**, **DESERT RANCH MANAGEMENT LLC**, and **DOES 1-5**,<br><br>Defendants. | Adv No. **10-00088** |

# MEMORANDUM of DECISION

At Butte in said District this 3rd day of January, 2012.

Pending in this Adversary Proceeding is Defendant Timothy Blixseth's ("Tim") "Motion for Reconsideration of This Court's August 1, 2011 Order Denying Motion to Dismiss Adversary Complaint Pursuant to Fed.R.Bankr.P. 7012(b)" filed August 15, 2011. Tim's motion is accompanied by a request for judicial notice. On the same date that Tim filed his motion for reconsideration, the Court entered an Order agreeing to hold all matters in this Adversary

1

Proceeding in abeyance pending resolution of a motion to withdraw the reference filed with the United States District Court for the District of Montana ("District Court"). The District Court declined to withdraw the reference. Thus, Tim's motion for reconsideration is ready for decision. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law. For the reasons discussed below, Tim's request for reconsideration is denied.

BACKGROUND

On October 1, 2010, the Plaintiff Richard Samson ("Samson") commenced this Adversary Proceeding by filing a complaint against Tim and other parties, alleging certain unlawful acts related to Tim and Debtor Edra Blixseth's ("Edra") Marital Settlement Agreement ("MSA").[1] Tim responded to Samson's complaint on November 11 and 12, 2010, by filing motions to dismiss for lack of personal jurisdiction, for lack of subject matter jurisdiction under Civil Rule 12(b)(1), and for failure to state a claim upon which relief can be granted under Civil Rule 12(b)(6). Tim also filed a motion for mandatory and/or permissive abstention.

Shortly thereafter, on November 19, 2010, Tim filed a *pro se* "Amended Motion to Disqualify Bankruptcy Judge Kirscher." Tim, through counsel, filed another "Motion to Disqualify Bankruptcy Judge Kirscher" on December 14, 2010. Following a hearing held January 18, 2011, I entered a decision on February 25, 2011, denying Tim's request that I

---

[1] Edra filed for divorce in the Riverside Superior Court in December 2006, *In re Marriage of Blixseth*, Riverside Superior Court Case No. RIDINDO91152. As part of the divorce proceeding, Tim and Edra entered into the MSA on June 26, 2008. The MSA consists of 42 pages plus exhibits. The MSA was amended by an Amendment to Marital Settlement Agreement dated July 2, 2008, consisting of 4 pages, and was again amended by a Second Amendment to Marital Settlement Agreement dated August 12, 2008, consisting of 7 pages plus exhibits and certain side letters. Property was transferred pursuant to the MSA on or about August 20, 2008.

disqualify myself from this and various other proceedings.

Following the hearing on Tim's request for disqualification, a hearing on Tim's motion to dismiss was held February 14, 2011. After the February 14, 2011, hearing and before the Court entered a ruling on Tim's request for dismissal, the Court was advised that an involuntary bankruptcy had been filed against Tim in the United States Bankruptcy Court for the District of Nevada. Because of the involuntary bankruptcy proceeding, the Court held Tim's motion to dismiss in abeyance. Upon later learning that the involuntary proceeding was dismissed, this Court entered a Memorandum of Decision and Order on August 1, 2011, denying Tim's motion to dismiss Count I (to set aside the MSA), Count IV (preferential transfer), Count V (breach of fiduciary duty), Count VII (constructive trust), and Count VIII (equitable subordination). The Court *sua sponte* ruled in the same Memorandum of Decision and Order that it would grant the motion to dismiss as to Counts II, III, and VI (the fraudulent conveyance claims), but in lieu of dismissal, granted the parties leave to file a motion with the District Court requesting that it withdraw the reference as to all or part of Adversary Proceeding 10-00088.

As instructed, Samson filed a motion to withdraw the reference in District Court. On October 5, 2011, United States District Court Judge Sam E. Haddon entered a brief order denying the motion to withdraw reference.

While Judge Haddon was considering Samson's request for withdrawal of the reference, Samson filed a motion for leave to file brief regarding procedural status and memorandum in support, which motion the Court granted on October 26, 2011. Thereafter, Tim filed a response to the Trustee' brief and attached thereto the transcript of a hearing held before Judge Haddon on September 30, 2011, a brief and transcript for a proceeding wholly unrelated to this proceeding,

and the transcript of the hearing held October 21, 2011, before Judge Sharon J. Waters of the Superior Court of California, County of Riverside ("Superior Court"). Tim also filed a suggestion of lack of subject matter jurisdiction over Counts II, III, and VI. Given Judge Haddon's October 5, 2011, ruling and upon consideration of the recent pleadings filed by the parties, the Court deems it appropriate to now consider Tim's pending request for reconsideration.[2]

APPLICABLE LAW

In the pending request for reconsideration, Tim does not seek reconsideration of that portion of the Court's August 1, 2011, decision finding that it lacked subject matter jurisdiction over Samson' fraudulent conveyance claims. Rather, Tim seeks partial reconsideration of this Court's August 1, 2011, Order under F.R.B.P. 7012(b). Rule 7012 sets forth the time and procedures for serving responsive pleadings, for asserting factual and legal defenses and objections, and for making preliminary motions and motions for judgment on the pleadings. Rule 7012 is, by its plain language, not a rule that provides for reconsideration. Tim's reference to such Rule is thus obviously a reference to the title of Tim's original motion to dismiss.

Other than F.R.B.P. 7012(b), Tim's motion for reconsideration cites not a single rule or code section. While it is obvious Tim is requesting that this Court reconsider a portion of its August 1, 2011, ruling, it is not clear whether Tim is requesting relief under F.R.B.P. 9023 or 9024. The Court deems Tim's motion a request under Rule 59. Rule 59, Fed.R.Civ.P.,

---

[2] On September 19, 2011, Tim appealed this Court's February 25, 2011, Order denying his Amended Motion to Disqualify filed December 14, 2010, at docket entry no. 39. Tim has not sought a stay pending appeal, and thus, this Court concludes it can proceed with pending matters in this Adversary Proceeding.

4

incorporated into the Federal Rules of Bankruptcy Procedure by Rule 9023, provides in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." Under Rule 9023, "[a] motion to alter or amend a judgment must be filed no later than [14] days after the entry of the judgment."[3] Rule 59(e) includes motions for reconsideration. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); 11 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2nd § 2810.1.

In *Brandt v. Esplanade of Central Montana, Inc., et al.* (*"Brandt"*), 19 Mont. B.R. 401, 403 (D. Mont. 2002), the District Court, in affirming this Court's decision, discussed amendment of an order under Rule 59(e): "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law. *School Dist. No. 1J, Mutnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)." *See also In re Teigen*, 11 Mont. B.R. 91, 92 (Bankr. D.Mont. 1992). Absent highly unusual circumstances, a motion for reconsideration should not be granted if the above test is not met. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Finally, a Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Kona Enterprises, Inc.*

---

[3] Rule 59, Fed.R.Civ.P, was amended in 2009 to extend the deadline for filing such actions to 28 days after the entry of judgment. However, in the context of bankruptcy proceedings, the deadline for filing a notice of appeal is 14 days. Thus, Bankruptcy Rule 9023 was amended to shorten the 28 day period in Rule 59 to 14 days so that Bankruptcy Rule 9023 would not override the notice of appeal deadline under Rule 8002(a).

*v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

## DISCUSSION

Tim first argues this Court made a factual error when it refused to abstain because this "Court was under the erroneous impression that no parallel action had been commenced in the California Superior Court to enforce the terms of the Marital Settlement Agreement entered between Mr. Blixseth and the Debtor, Edra Blixseth." The Court's impression, if erroneous, was formed from the argument and evidence presented by Tim's counsel. In the brief filed in support of the motion to abstain filed November 11, 2010, Tim did not assert the existence of a parallel action but instead argued that the California Superior Court,

> specifically retained jurisdiction to adjudicate disputes arising out of the MSA. Morever, California has a statutory mechanism in place to rapidly adjudicate and enforce settlements, Cal. Code. Civ. P. § 664.6. The statutory procedure is "an expeditious, valid alternative statutorily created." *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (1991). Finally, the California Superior Court has jurisdiction over the parties pursuant to the MSA.

Brief in support of Motion for Mandatory Abstention or Permissive Abstention, docket entry no. 9, p.6. Similarly, Tim's counsel argued at the February 14, 2011, hearing: "[T]here is an action in state court. Judge Waters specifically retained jurisdiction. And there's an expedient method by which Mr. Samson can go to California and get answers to the questions that he poses by way of his complaint."

The statements by Tim's counsel regarding the California Superior Court's retained jurisdiction do not establish the existence of a parallel state court action. Indeed, it appeared from other statements made by the parties that as of November 18, 2011, the date Tim filed his motion, and February 14, 2011, the date of the hearing on Tim's motion to dismiss, that nothing

had transpired in Tim and Edra's California Superior Court divorce proceeding since approximately the date of Tim and Edra's judgment of dissolution, which was October 7, 2008. Given the absence of any evidence of a parallel state court action, this Court was precluded from exercising its discretion to abstain. *See Security Farms v. International Board of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997). As alluded to earlier, this Court did not learn that Tim had filed a request for money judgment in the Superior Court action until after this Court entered its August 1, 2011, decision.

Furthermore, the evidence presented to date does not conclusively establish that the California Superior Court retained jurisdiction to consider the matters at issue in this Adversary Proceeding. Judge Waters commented at the October 21, 2011, California Superior Court hearing that the MSA between Tim and Edra "was, and remains, the most unusual settlement agreement that I never put on the record, because I never heard the terms of the settlement." Not knowing the terms of the MSA, Judge Waters issued a judgment on October 7, 2008, providing that the Superior Court of California would retain "jurisdiction as provided for in the MSA in accordance with the terms and provisions of the MSA." Through this Court's review of the MSA, it found two provisions addressing the California Superior Court's continuing jurisdiction:

> J. Jurisdiction over Tax Matters: The Court shall retain jurisdiction to make further orders as necessary to enforce these tax provisions[; and]

> \* \* \*

> 64. Except as otherwise provided herein, the Court shall not retain jurisdiction to modify or alter this Stipulation in any fashion whatsoever. The Court will retain jurisdiction only to enforce the terms of this stipulation in the event of a breach by either party.

Pages 28 and 41of the MSA. The relief sought by Samson in his complaint does not appear to

7

fall within either of the aforementioned passages from the MSA.  Provided the MSA is not set aside, the Court agrees that the California Superior Court has continuing jurisdiction to consider Tim's pending request for entry of judgment.  However, vague statements regarding retained jurisdiction do not show the existence of a parallel state court action.

Moreover, the Court is not persuaded that Tim's July 5, 2011, request for money judgment is a parallel proceeding.  As noted earlier, unbeknownst to this Court and between the time of the February 14, 2011, hearing and entry of the Memorandum of Decision and Order on August 1, 2011, Tim sought on or about July 5, 2011, a money judgment against Edra in the sum of $999,996, which amount Tim alleges was to be paid "by November 12, 2008 to satisfy his claim for unpaid management fees (relative to BLX Group, Inc.) [paragraph 16.A.(b) of MSA][.]"

Upon learning of Tim's July 5, 2011 motion in California, Samson filed a motion in Edra's main bankruptcy case on September 26, 2011, requesting that this Court issue an injunction to preclude Judge Waters from deciding Tim's request for money judgment.  Before this Court entered a decision on Samson's request for an injunction, Judge Waters held a hearing on October 21, 2011, after which she entered a decision on November 16, 2011, staying all proceedings with respect to the MSA, including Tim's request for a money judgment.  As a result of Judge Waters' decision, Samson withdrew his request for an injunction.

Notwithstanding Judge Waters' decision to stay all proceedings with respect to the MSA, Tim's request for a money judgment is not the same as Samson's request to set aside the MSA.  Rather, the outcome of Tim's request for a money judgment is dependent in large part on whether the MSA is ultimately upheld or set aside.  In any event the Court is not persuaded that a

parallel state court action exists even at this time.  Absent a parallel state court action, this Court is precluded from exercising its discretion to abstain.

Tim also argues in this request for reconsideration that this Court is precluded from evaluating the validity of the MSA.  As this Court explained in its August 1, 2011, Memorandum of Decision in Adversary Proceeding 10-00088, the *Rooker-Feldman* doctrine is not an issue because when a state court merely adopts a marital property settlement without adjudicating the property division, such as it appears Judge Waters did with respect to the MSA, subsequent claims alleging misconduct by the former spouse in obtaining that settlement are not barred by *Rooker-Feldman* because the plaintiff is alleging misconduct by the spouse rather than error by the state court.  This Court also *sua sponte* examined the domestic relations exception and concluded such exception did not apply to the Samson's claims, including Samson's claim to set aside the MSA.

While apparently not disputing the foregoing, Tim argues this Court committed a legal error by failing to require that Samson plead restitution.  In support of such argument, Tim argues "Cal. Code Civ. P. § 1691 requires the 'party seeking rescission to . . . restore all consideration or 'everything of value which he has received' under the contract.  The statute's language is clear.' *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.*, 50 Cal. 4th 913, 921-922 (2010)."  Without addressing the merit or applicability of such law or argument, the evidence this Court has seen in other related proceedings shows that several of the assets Edra received through the MSA, such as the Yellowstone Club, consisting of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, along with Big Springs Realty, LLC, and Yellowstone Club

9

World, LLC, were financially insolvent as of the effective date of the MSA. According to Tim's argument, if the assets had no value, requiring Samson to plead restitution would be a pointless exercise.

Finally, Tim argues this Court erred when it labeled various of his defenses as affirmative defenses which were inappropriate to consider in a motion to dismiss. Tim argues this Court failed to take judicial notice of certain court filings and other matters of public record, which filings and documents, such as the MSA, would establish the absence of a disputed issue of fact. More specifically, Tim argues the MSA is "central to the Trustee's Claim" and that the MSA, along with the order approving the MSA and the transcript of the July 8, hearing on approval of the MSA "establish res judicata, statutory, equitable and judicial estoppel, as well as waiver and release." A reading of the Court's August 1, 2011, Memorandum of Decision shows the Court did consider various filings and documents, such as the MSA. Therefore, the Court finds Tim's latter argument without merit.

The Court doubts that either Tim or Edra anticipated the volume of litigation their complicated web of corporations, real estate holdings and operating companies, and their subsequent acrimonious divorce, would produce. For instance, the Yellowstone Club entities, consisting of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC sought bankruptcy protection on November 10, 2008. *See* Bankruptcy Case Nos. 08-61570, 08-61571, 08-61572 and 08-61573. The hours of hearings generated by the foregoing bankruptcies was unprecedented in this Court. In addition, the Yellowstone Club entities' bankruptcy generated eight associated adversary proceedings. Later, the bankruptcy of Big Springs Realty, LLC, *see* Bankruptcy Case

No. 09-61079, produced one adversary proceeding; the bankruptcy of Yellowstone Club World, LLC, *see* Bankruptcy Case No. 09-60061, generated three adversary proceedings; Edra's personal bankruptcy produced 24 adversary proceedings; and the bankruptcy of BLX Group, Inc., f/k/a Blixseth Group, Inc.'s bankruptcy, *see* Bankruptcy Case No. 09-61893, generated three adversary proceedings. This Court's decisions in the above matters have, in turn, produced numerous appeals.

Notwithstanding the foregoing, Tim argues the California Superior Court is better acquainted with the facts and is better equipped to expeditiously deal with various of the issues raised in this Adversary Proceeding. For instance, Tim argues in a brief that "California has a statutory mechanism in place to rapidly adjudicate and enforce settlements, Cal. Code. Civ. P. § 664.6. The statutory procedure is 'an expeditious, valid alternative statutorily created.'" Brief in support of Motion for Mandatory Abstention or Permissive Abstention, docket entry no. 9, p.6. Additionally, at that hearing, Tim's counsel stated:

> But it's important to note as well that Counts 1, 5, and 7 are the noncore components of the bankruptcy complaint. They are all based upon the same basic allegation which is that Mr. Blixseth misrepresented facts to Ms. Blixseth, induced her into this agreement, and that the trustee now wants to go back and rescind that agreement.
>
> So California actually has an expedited procedure by which the trustee standing in Ms. Blixseth's shoes could go to California, ask Judge Waters to entertain these three counts, and get a ruling. And in doing so, one of two things would happen: Judge Waters would either reinforce what she painstakingly set forth and unequivocally set forth in the order on waivers and releases, or she would agree with the trustee.
>
> * * *
>
> So with respect to Subpart 5 - and I apologize, Your Honor, because it's all interrelated - there is an action in state court. Judge Waters specifically retained

11

> jurisdiction. And there's an expedient method by which Mr. Samson can go to California and get answers to the questions that he poses by way of his complaint.
>
> * * *
>
> So if the trustee contends that the orderly administration of the estate, which is an element under permissive abstention, is -- would be frustrated, that's not the case. I mean it may be and probably is the case that the trustee could go and file his claim in California and have an adjudication before discovery even closed in these AP proceedings.

The Court agrees with Tim that Judge Waters is fully qualified and capable to rule on various of the issues raised in this Adversary Proceeding.  However, the Court questions the ability of any court to fashion an expeditious ruling on any issue until they are fully apprised of the inner workings of Tim and Edra' business dealings, and the impact thereon caused by the various bankruptcy proceedings.

For instance, Tim is, in the California Superior Court, seeking a money judgment against Edra in the sum of $999,996, yet Tim did not file a claim in Edra's bankruptcy case for the above debt and would thus not participate in any distribution from her bankruptcy estate.  Instead, Tim filed Proof of Claim No. 14 in the bankruptcy case of BLX Group, Inc.  That claim is listed as an unsecured claim in the amount of $999,996 stemming from "management services."  Tim attached 4 pages and paragraph 16b of the 42-page MSA to Proof of Claim No. 14.  Paragraph 16b recites that "[t]he Yellowstone Entities owe BGI management fees that were to be paid for the months from July 2007 to June 2008, at the rate of $83,333 per month, a total of $999,996.  The Petitioner shall cause BGI to make said payments to Respondent, for his management services during said month, on or before the 90th day after The Closing.  Said payments shall be taxable to Respondent and deductible to BGI.  The Petitioner shall have no obligation to

contribute money to the Yellowstone Entities or BGI to fund such payments to Respondent." To date, the Chapter 11 Trustee in the BLX Group, Inc. bankruptcy case has not objected to the allowance of Tim's Proof of Claim No. 14. A court deciding whether Tim is entitled to a money judgment against Edra may be interested to know that Tim filed a claim against BLX, but not Edra.

Keeping matters in one court also prevents parties from inadvertently misstating events in another court. For instance, in discussing this Court's scheduling of the hearing on Samson's motion to stay the California proceedings, Tim's counsel stated to Judge Waters:

> It is a reasonable assumption when bankruptcy Judge Kirscher set the matter in Blixseth for a hearing before this hearing, and then continued it to a hearing after this hearing, that there was a reason for doing that. And the reason, I think, that is logically and reasonably inferable from that is he wanted your input as to whether or not you thought you should hear this matter, and then he would take his cue from that.

While the Court certainly appreciates Judge Waters' input on the matter, what the record before this Court reflects is that Samson filed his motion for injunction and requested an expedited hearing on September 26, 2011. On September 27, 2011, this Court entered an Order setting the matter for expedited hearing October 4, 2011. On September 30, 2011, Tim, through counsel, filed a request to continue the October 4, 2011, hearing to October 17, 2011, "to enable Mr. Blixseth to properly research and respond to the Trustee's Motion and to subpoena the Debtor and other key witnesses whose testimony is directly relevant to the Trustee's Motion. Because there is no hearing scheduled in the state court on Mr. Blixseth's Motion for a Money Judgment, there is no reason to expedite the hearing at this time." Because the Court's schedule would not accommodate Tim's request to continue the matter to October 17, 2011, the Court

13

entered an Order on October 3, 2011, continuing the hearing on Samson's motion to November 8, 2011. This Court could not have continued the hearing on Samson's motion for the purpose of allowing Judge Waters to weigh in on the matter because this Court was not aware that Judge Waters had scheduled a hearing on Tim's request for money judgment.

For the reasons discussed above, Tim's motion for reconsideration is denied. However, denial of Tim's request for reconsideration does not bring finality to the Court's August 1, 2011, Memorandum of Decision and Order, and this Court must bring finality to such decision so the parties may move forward.

As a court of equity, this Court has broad discretion under Rules 59(e) and 60(b), Fed.R.Civ.P., to *sua sponte* reconsider, vacate, or modify past orders so long as no intervening rights have become vested in reliance on the order. *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739–40 (9th Cir. 1990). No party's intervening rights have vested in reliance on the Court's initial decision made August 1, 2011. Fed.R.Civ.P. 59(e) refers to "judgments." "Judgment" is defined in Fed.R.Civ.P. 54(a) as "a decree and any order from which an appeal lies." In other words - a "final" order. Fed.R.Civ.P. 60(b) also refers to relief from "final" orders.

As instructed by this Court on August 1, 2011, the parties filed a motion for withdrawal of the reference with Judge Haddon. Judge Haddon denied such request on October 5, 2011, and the matter has sat since that time awaiting a ruling by this Court on Tim's pending request for reconsideration. Given the state of the record, including Judge Haddon's comments made September 30, 2011, this Court's August 1, 2011, decision does not yet constitute entry of a judgment or final order. As such, the court has inherent power to modify, alter, or vacate the August 1, 2011 decision. *See United States v. Martin*, 226 F.3d 1042, 1048-49 (9th Cir. 2000)

(authority of district courts to reconsider their own orders before they become final absent some contrary rule or statute allows them to correct decisions based on shifting precedent); *Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 373 (9th Cir. BAP 2011).

The Court *sua sponte* amends its August 1, 2011, Memorandum of Decision and Order in accordance with this Memorandum of Decision. In particular, I find the Court erred when it made reference to subject matter jurisdiction in its August 1, 2011, ruling. Subject matter jurisdiction "refers to a tribunal's ' "power to hear a case." ' " *Union Pacific R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U.S. ——, ——, 130 S.Ct. 584, 596, 175 L.Ed.2d 428 (2009) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), in turn quoting *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). The Supreme Court in *Stern v. Marshall* specifically stated its decision did not implicate questions of subject matter jurisdiction:

> Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction. See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case). By the same token, § 157(b)(5) simply specifies where a particular category of cases should be tried.

*Stern v. Marshall*, 131 S.Ct. at 2607. The Supreme Court then went on to conclude only that bankruptcy courts lack the constitutional authority to enter final judgments on state law counterclaims that are not resolved in the claims allowance process. *Id.* at 2620.

Having now had the benefit of more time to reflect on *Stern v. Marshall*, I find the Court's August 1, 2011, decision in this Adversary Proceeding was flawed in one respect. The "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited

15

by, statute." *Battleground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). A bankruptcy court's jurisdiction is, generally, prescribed by 28 U.S.C. § 1334(b). In addition to granting jurisdiction to bankruptcy courts over bankruptcy cases, the statute provides that "the district courts [and by reference pursuant to 28 U.S.C. § 157, the bankruptcy courts] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

In a 5-4 decision, the Supreme Court in *Stern v. Marshall* concluded that -- even though the proceeding was core under 28 U.S.C. § 157(b)(2)(C) and that the bankruptcy court had the statutory authority to resolve the matter --the bankruptcy court nevertheless lacked the constitutional power to finally decide a state-law counterclaim where the counterclaim was not so closely related to the creditor's claim that it could be adjudicated as part of the claims resolution process. Shortly after the Supreme Court entered its decision in *Stern v. Marshall*, this Court entered its August 1, 2011 decision concluding:

> Since this Court may not constitutionally hear the fraudulent conveyance claim as a core proceeding, and this Court does not have statutory authority to hear it as a non-core proceeding, it may in no case hear the claim. Therefore, this Court grants the parties fourteen days in which to move the District Court to withdraw its reference, in whole or in part, pursuant to 28 U.S.C. § 157(e), or else it will dismiss the fraudulent conveyance claims for lack of subject matter jurisdiction.

Such decision was flawed. In March of this year, the United States Supreme Court entered a decision that provides instructful guidance on the matter addressed here. *See Henderson ex rel. Henderson v. Shinseki*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011). In an attempt to "bring some discipline" to the use of the term "jurisdictional" the

16

Supreme Court in *Henderson* wrote:

> Branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system. Under that system, courts are generally limited to addressing the claims and arguments advanced by the parties. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356-357, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006). Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. *See Arbaugh, supra*, at 514, 126 S.Ct. 1235.
>
> Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. For purposes of efficiency and fairness, our legal system is replete with rules requiring that certain matters be raised at particular times. *See Sanchez-Llamas, supra*, at 356-357, 126 S.Ct. 2669. Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. *Arbaugh*, 546 U.S., at 508, 126 S.Ct. 1235. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. *Ibid*. And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted.
>
> Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. *Reed Elsevier, supra*, at ----, 130 S.Ct., at 1243-1244; *Kontrick, supra*, at 455, 124 S.Ct. 906. Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand. *See Union Pacific*, 558 U.S., at ----, 130 S.Ct., at 596.

In *Stern v. Marshall,* the Supreme Court reiterated:

> Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," *Henderson v. Shinseki*, 562 U.S. ——, —— – ——, 131 S.Ct. 1197, 1201–03, 179 L.Ed.2d 159 (2011), we are not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such. *See generally Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character").

17

> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court "jurisdiction," instead addressing only where personal injury tort claims "shall be tried."
>
> The statutory context also belies Pierce's jurisdictional claim. Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. *See* §§ 157(b)(1), (c)(1). That allocation does not implicate questions of subject matter jurisdiction. *See* § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case). By the same token, § 157(b)(5) simply specifies where a particular category of cases should be tried. Pierce does not explain why that statutory limitation may not be similarly waived.

Consistent with the above, several courts have recently concluded that *Stern v. Marshall* does not deprive bankruptcy courts of subject matter jurisdiction. *See, e.g., In re Wilderness Crossings, LLC,* 2011 WL 5417098, *1 (Bankr. W.D.Mich. Nov 08, 2011); *In re Bujak*, 2011 WL 5326038, *2 (Bankr. D.Idaho Nov 03, 2011); *In re Sunra Coffee LLC*, 2011 WL 4963155, *4 (Bankr. D.Haw. Oct 18, 2011); and *In re Citron*, 2011 WL 4711942, *2 (Bankr. E.D.N.Y. Oct 06, 2011).

Following the express language of *Henderson* and *Stern v. Marshall*, this Court concludes that because the United States District Court for the District of Montana would have the requisite subject-matter jurisdiction to adjudicate the claims in this Adversary Proceeding, so too does this Court. Consistent with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Defendant Timothy Blixseth's Motion for Reconsideration of This Court's August 1, 2011 Order Denying Motion to Dismiss Adversary Complaint Pursuant to Fed.R.Bankr.P. 7012(b) filed August 15, 2011, at docket entry no. 57 is DENIED.

IT IS FURTHER ORDERED that the Court's Order of August 1, 2011, is amended to read as follows:

IT IS ORDERED Defendant Timothy Blixseth's Motion for Mandatory Abstention or Permissive Abstention, filed November 11, 2010 at docket entry no. 9, is denied.

IT IS FURTHER ORDERED that Defendant Timothy Blixseth's Motion to Dismiss Adversary Complaint Pursuant to Fed.R.Bankr.P. 7012(b), filed November 12, 2010 at docket entry no. 12, is denied.

BY THE COURT

*Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana